No. CR-04-0941

*In the COURT of CRIMINAL APPEALS of ALABAMA*

EDDIE RAY JAMES,

*Appellant,*

v.

STATE OF ALABAMA,

*Appellee.*

*On Appeal From the Circuit Court of Covington County (CC-04-288)*

**BRIEF OF APPELLEE**

Troy King
*Attorney General*

Marc A. Starrett
*Assistant Attorney General*
Counsel of Record*

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300*

October 27, 2005



**STATEMENT REGARDING ORAL ARGUMENT**

The State of Alabama does not request oral argument, because the issues before this Court are adequately briefed and the Court's decisional process would not be significantly aided by oral argument. Ala.R.App.P. Rule 34 (a)(3).

**TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT........................ ii

TABLE OF CONTENTS....................................... ii

TABLE OF AUTHORITIES.................................... i

STATEMENT OF THE CASE................................... 1

STATEMENT OF THE ISSUE.................................. 4

STATEMENT OF THE FACTS.................................. 5

STANDARD OF REVIEW...................................... 8

SUMMARY OF THE ARGUMENT................................. 9

ARGUMENT............................................... 11

    The Trial Court Did Not Err In Finding That The State
    Did Not Violate The 180-Day Time Limit Set Forth In The
    Interstate Agreement On Detainers Act, And In Thus
    Denying James's "Motion To Dismiss" And "Motion For
    Judgment Of Acquittal Notwithstanding The Verdict Or In
    The Alternative Motion For New Trial" On That Ground.. 11

      A.  To implicate, and potentially benefit from, the
      limitation period provisions of the IAD, the
      defendant must deliver a properly documented
      request for a final disposition of his untried
      indictment by certified mail to the prosecuting
      officer and appropriate court...................... 12

## TABLE OF CONTENTS (CONT'D)

B.  James's April 26, 2004 "Motion For Order
Dismissing Detainer" filed in the Covington County
Circuit Court did not trigger the provisions of the
IAD; rather, his May 29, 2004 "Notice Of Place Of
Imprisonment and Request For Disposition Of
Indictments, Informations, Or Complaints,"
properly delivered by the Florida Department of
Corrections with other pertinent IAD documents,
triggered those provisions, and his
November 18, 2004 trial was timely as a result.
....................................................... 19

CONCLUSION............................................... 23

CERTIFICATE OF SERVICE................................... 24

## TABLE OF AUTHORITIES

**Cases**

Alabama v. Bozeman, 533 U.S. 146, 121 S. Ct. 2079, 2083,
 150 L. Ed. 2d 188 (2001) ........................ 12-13, 15

Carchman v. Nash, 473 U.S. 716, 105 S. Ct. 3401,
87 L. Ed. 2d 516 (1985).................................. 12

Ex parte Bozeman, 781 So. 2d 165 (Ala. 2000)............ 15

McCallum v. State, 407 So. 2d 865 (Ala. Crim.
App. 1981).................................... 16-17, 21-23

Morrow v. State, 675 So. 2d 89, 90 (Ala. Crim. App. 1995) 13

Nichols v. State, 651 So. 2d 76 (Ala. Crim.
App. 1994)........................................ 18, 22-23

Stephens v. State, 801 So. 2d 34 n. 1 (Ala. Crim.
App. 2000)......................................... 11, 13

St. John v. State, 473 So. 2d (Ala. Crim.
App. 1985)........................................ 17, 22-23

Whitley v. State, 392 So. 2d 1220 (Ala. Crim.
 App. 1980).................................... 15-16, 21-23

**Statutes**

Alabama Code (1975)

§ 15-9-81........................................... 12, 22

§ 15-9-81, Art. III, (a),(b),(d).................. 15, 22-23

## STATEMENT OF THE CASE

Eddie Ray James appeals from his November 19, 2004 conviction and corresponding sentence on the charge of unlawful distribution of a controlled substance (cocaine), a violation of Alabama Code (1975) § 13A-12-211; Covington County Circuit Court Judge M. Ashley McKathan presided over James's jury trial and subsequent sentencing. (C. 78-79, 114, R. 1, R. 165)  James was indicted on this charge by the September 2003 session of the Covington County Grand Jury.  (C. 1-2)  In addition to finding James guilty of this offense, the jury also found that James sold the cocaine within a three-mile radius of both a school and a public housing project for purposes of the sentence enhancement provisions of Alabama Code (1975) §§ 13A-12-250 and 13A-12-270.  (C. 78-79, R. 165) The charge arose from James's sale of cocaine during an undercover operation conducted by the Alabama Alcoholic Beverage Control Board. (R. 27-36).

On November 10, 2004, James moved to dismiss his charge on the ground that the State had failed to comply with the 180-day time limit provisions of the Interstate Agreement on Detainers.  (C. 40)  James, who had been in the custody

of the Florida Department of Corrections on an apparently
unrelated conviction and sentence when the State of Alabama
lodged a detainer against him following his indictment,
argued that the trial of his case was untimely.  (C. 40-41)
The State filed a written opposition to the motion.  (C.
54)  On November 18, 2004, the trial court conducted a
hearing on James's motion, denied the motion, and allowed
his trial to proceed on that date.  (Supp. R. 1, 29, R. 1)
The trial court also denied an April 26, 2004 pro se
"Motion For Order Dismissing Detainer" that James had filed
in Covington County Circuit Court.  (C. 10)

In its November 24, 2004 sentencing hearing, the trial
court adjudicated James guilty and sentenced him under the
Alabama Habitual Felony Offender Act to thirty years'
imprisonment, which included two consecutive five-year
terms of imprisonment under Sections 13A-12-250 and 13A-12-
270.  (C. 115, R. 187-188)  The trial court further
directed James to pay court costs, appointed attorney fees,
a $50 victims' compensation fund assessment, a $1,000
assessment under the Demand Reduction Assessment Act, and a
$100 assessment to the Alabama Forensic Services Trust
Fund.  (C. 115)  The trial court ordered the suspension of

2

James's driver's license, and directed him to pay $20 to the Covington County Office of the Alabama Alcoholic Beverage Control Board.  (C. 115)

Following the trial court's denial of his "Motion For Judgment Of Acquittal Notwithstanding The Verdict Or In The Alternative Motion For New Trial," James appealed to this Court.  (C. 102, 104, 116)

## STATEMENT OF THE ISSUE

Did the trial court err in finding that the State did not violate the 180-day time limit set forth in the Interstate Agreement on Detainers Act, and in thus denying James's "Motion to Dismiss" and "Motion For Judgment Of Acquittal Notwithstanding The Verdict Or In The Alternative Motion For New Trial" on that ground?

## STATEMENT OF FACTS

Because Eddie Ray James challenges his conviction only on the ground that the State violated the Interstate Agreement on Detainers in trying him on his unlawful distribution of a controlled substance charge, see Appellant's Brief 5-8, only a brief summary of the facts underlying this conviction is set forth below.

Between February 2002 and December 2002, the State of Alabama Alcoholic Beverage Control Board engaged in an undercover narcotics investigation in Covington County. (R. 28, 30-31)  During that time, Sergeant Andy Lard was working with the Board as an undercover agent to purchase narcotics from local drug dealers.  (R. 27-28, 30-31, 32-33)  At approximately 4:17 p.m. on March 20, 2002, Sergeant Lard was driving on Harden Street in Opp when he saw a young man -- later identified to be Eddie Ray James -- standing on the corner of the street.  (R. 35-36, 131) Sergeant Lard approached James and asked him, "Hey, do you know where I can get a twenty at?", referring to twenty dollars' worth of crack cocaine.  (R. 36, 33)  James told him to drive up the block, and, when Sergeant Lard drove

back, James gave him a rock of crack cocaine in exchange

for a twenty-dollar bill:

> "LARD:  So I went down a short piece and
> turned around.  I was coming back and he was
> coming out of the edge of the woods, came up
> to the vehicle, handed me the rock of crack
> cocaine, and I handed him a twenty-dollar
> bill."

(R. 36)  The transaction was videotaped, and the videotape

was later played for the jury at James's trial in this

case.  (R. 43-47)  Sergeant Lard then met with Board Agent

Leo Bedsole, Jr., and gave him the cocaine.  (R. 37, 42,

69)  Agent Bedsole later arrested James and several other

drug dealers in the undercover operation. (R. 73-74, 84)

Later measurements revealed that the purchase occurred

within approximately 5/10ths of a mile from an elementary

school, and approximately 150 feet from a housing project.

(R. 83-84, 102)  Forensic analysis revealed that the

substance sold to Sergeant Lard was, in fact, cocaine base,

also known as crack cocaine.  (R. 96)

James testified at trial, claiming that he did not sell

cocaine to Sergeant Lard and that the officers had mistaken

him for the person who did so.  (R. 125-126)  The State's

cross-examination of James revealed, however, that he had

been previously convicted of forgery and theft of property, both crimes of dishonesty.  (R. 127-129)[1]

Following the jury's finding of James's guilt on the indicted offense of unlawful distribution of a controlled substance, the trial court adjudicated James's guilt in accordance with that verdict and imposed its sentence.  (R. 165-166, 185-190)  After the trial court denied his "Motion For Judgment Of Acquittal Notwithstanding The Verdict Or In The Alternative Motion For New Trial," James appealed to this Court.  (C. 102, 104)

---

[1]See, e.g., Alabama Rules of Evidence Rule 609 (a)(2); Snyder v. State, 893 So. 2d 488, 539 (Ala. Crim. App. 2003) (theft and forgery are crimes of dishonesty or moral turpitude for purpose of impeachment); Huffman v. State, 706 So. 2d 808, 813 (Ala. Crim. App. 1997) (theft is a crime of dishonesty for purpose of impeachment).

## STANDARD OF REVIEW

"[A] trial court's ruling upon the application of the law to undisputed facts, or upon a mixed question of law and fact, carries no presumption of correctness[.]" Campbell v. State, 574 So. 2d 937, 941 (Ala. Crim. App. 1990).

## SUMMARY OF THE ARGUMENT

James's filing of a pro se "Motion For Order Dismissing Detainer" in the Covington County Circuit Court on April 26, 2004 did not trigger the 180-day limitation period under Alabama Code (1975) § 15-9-81, this State's codification of the Interstate Agreement on Detainers ("IAD"), because the filing did not comply with that statute.  If a defendant does not comply with the IAD by delivering a request for disposition, in proper form, to the appropriate court and prosecuting authority, the 180-day period is not activated.  The triggering act under the IAD in this case was the State of Florida Department of Corrections's May 29, 2004 delivery of James's request for disposition of his unlawful distribution of a controlled substance charge to the Covington County Circuit Court and the Covington County District Attorney.

James's charge was brought to trial on November 18, 2004, within 180 days of the May 29, 2004 delivery of James's request for disposition.  Because there was no violation of the 180-day period under the IAD, the trial court correctly denied James's pretrial "Motion To Dismiss" and posttrial ""Motion For Judgment Of Acquittal

9

Notwithstanding The Verdict Or In The Alternative Motion For New Trial" that asserted the contrary.

For these reasons, the trial court's judgment is due to be affirmed.

**ARGUMENT**

**The Trial Court Did Not Err In Finding That The State Did Not Violate The 180-Day Time Limit Set Forth In The Interstate Agreement On Detainers Act, And In Thus Denying James's "Motion To Dismiss" And "Motion For Judgment Of Acquittal Notwithstanding The Verdict Or In The Alternative Motion For New Trial" On That Ground.**

James argues on appeal that the trial court erred in denying his "Motion For Judgment Of Acquittal Notwithstanding The Verdict Or In The Alternative Motion For New Trial", which he based, in part, on his contention that the trial court "improperly ruled on the detainer filed by the Defendant prior to trial." Appellant's Brief pp. 5-8; (C. 102). James contends that the disposition of his unlawful distribution of a controlled substance charge was untimely under the Uniform Mandatory Disposition of Detainers Act, also known as the Interstate Agreement on Detainers ("IAD")[2], and that the trial court should have granted his motion for a judgment of acquittal on this ground as he had previously argued in his pretrial "Motion To Dismiss." Appellant's Brief 5-8; (C. 40, Supp. 1-29). He asserts that the State "was notified of the Appellant's

_____

[2]"The UMDDA is also known as the Interstate Agreement on Detainers ('IAD')." <u>Stephenson v. State</u>, 801 So. 2d 34, 34 n.1 (Ala. Crim. App. 2000).

whereabouts on April 26, 2004" due to his filing of a "Motion For Order Dismissing Detainer" in the Covington County Circuit Court on that date, and that the time limitation period under the IAD should be construed as having began to run on that date.  Appellant's Brief 6, 8. James argues that "[t]his notice on April 26, 2004 was and should be sufficient for the Court to begin the 180 days requirement as spelled out in the [IAD]."  Appellant's Brief 8.

**A.  To implicate, and potentially benefit from, the limitation period provisions of the IAD, the defendant must deliver a properly documented request for a final disposition of his untried indictment by certified mail to the prosecuting officer and appropriate court.**

Article III of the IAD, which was adopted by the State of Alabama and codifed in Alabama Code (1975) § 15-9-81, "establishes a procedure by which a prisoner incarcerated in one State....may demand the speedy disposition of 'any untried indictment, information or complaint' that is the basis of a detainer lodged against him by another State[.]" Carchman v. Nash, 473 U.S. 716, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985); Alabama v. Bozeman, 533 U.S. 146, 149, 121

12

S. Ct. 2079, 2083, 150 L. Ed. 2d 188 (2001).[3]  Section (a)

of Article III of the IAD provides that the defendant

"...shall be brought to trial within 180 days after he

shall have caused to be delivered to the prosecuting

officer and the appropriate court of the prosecuting

officer's jurisdiction written notice of the place of his

imprisonment and his request for a final disposition to be

made of the indictment, information, or complaint[.]"

Sections (a), (b), and (d) of Section III of the IAD

make clear that the written notice and request for a final

disposition must be in proper form and must be properly

delivered to the prosecuting state and court:

> "(a)...The request of the prisoner shall be
> accompanied by a certificate of the
> appropriate official having custody of the
> prisoner, stating the term of commitment under
> which the prisoner is being held, the time
> already served, the time remaining to be

---

[3]It is undisputed that James's September 2003 indictment
constituted an "untried indictment," serving as a basis for
James's detainer, for purposes of the IAD.  See, e.g.,
Stephenson v. State, 801 So. 2d 34, 37 ("Alabama has
recognized that the UMDDA applies to detainers involving
untried indictments, informations, or complaints pending
against an inmate in another state for which there has not
been a final disposition.") (emphasis in original); Morrow
v. State, 675 So. 2d 89, 90 (Ala. Crim. App. 1995)
("Article I clearly states that it pertains to 'untried
indictments.'").

served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decision of the state parole agency relating to the prisoner.

"(b)  The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"...

"(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Alabama Code (1975) § 15-9-81, Art. III, (a),(b),(d).[4]

As the Alabama Supreme Court has noted, "[t]he IAD is not ambiguous.  It would require a tortured reading of the statute for us to conclude...that a brief violation of the IAD can be ignored." Ex parte Bozeman, 781 So. 2d 165, 169 (Ala. 2000), aff'd, Alabama v. Bozeman, 533 U.S. 146, 121 S. Ct. 2079.  Correspondingly, its notice provisions, and their effect on the 180-day time limit for final disposition of "any untried indictment, information or complaint[,]" must be construed strictly -- as this Court has held for many years.

In Whitley v. State, 392 So. 2d 1220 (Ala. Crim. App. 1980), this Court reviewed a defendant's claim that his prosecution had violated the IAD's 180-day limitation period.  The Court noted that the defendant's "motion for a speedy trial" was delivered to a sheriff's office, rather than to the "prosecuting officer and the appropriate court

_____

[4]Section (c) of Article III requires the custodial state to inform the prisoner of the contents of his detainer and his corresponding rights; Section (e) concerns waiver of extradition; and Section (f) concerns the effect of a prisoner's escape upon his rights under the IAD.  These provisions are not at issue here.

of the prosecuting officer's jurisdiction." 392 So. 2d at

1224.   After reviewing caselaw from many other

jurisdictions, including that of the Tennessee Court of

Criminal Appeals and the Colorado Supreme Court, this Court

found that the motion did not comply with the IAD, and

therefore did not trigger its provisions:

> "The appellant has not made a proper request
> for disposition under the uniform mandatory
> disposition Detainer Act.
>
> "...
>
> "[W]e are of the opinion that there must be
> strict compliance by the prisoner with the
> requirements of Article III, otherwise, a
> conniving prisoner could finagle procedures to
> frustrate efforts of the prosecution to give
> the prisoner the benefit of the Interstate
> Compact on Detainers. The appellant's
> contention that his conviction was vitiated by
> failure of the State to comply with the
> procedures of the Act is not well founded. It
> is our judgment that the appellant's request
> for disposition was insufficient to trigger
> the State's obligation under Article III."

392 So. 2d at 1224.

     In McCallum v. State, 407 So. 2d 865 (Ala. Crim. App.

1981), this Court again reviewed a defendant's claim that

his prosecution had violated the 180-day limitation period.

Relying in part on Whitley, this Court held that, in order

to "initiate the statutory machinery" of the IAD, the

16

prisoner must provide a written request for final

disposition to the custodial "warden, commissioner of

corrections or other official[;]" "[a] prisoner seeking to

benefit from the statutory provisions must first meet the

burden of compliance with agreement."  407 So. 2d at 868.

The Court further held:

> "[O]nce an inmate bypasses the statutory
> procedure, the burden is on the prisoner to
> demonstrate strict compliance with the
> notification and certificate requirements of
> Sections (a) and (b) of art. III.  [Citation
> omitted.]  The 180-day time limitation of the
> agreement is triggered only when a prisoner
> has fully complied with the agreement.
> [Citations omitted.]  Since appellant failed
> to properly notify Alabama officials and have
> the certificate of inmate status sent to them,
> he did not comply with the agreement and the
> 180-day period was never activated."

407 So. 2d at 869.

In St. John v. State, 473 So. 2d 658 (Ala. Crim. App.

1985), the Court reviewed another attempt by a defendant to

bypass Article III's notice provisions, whereby the

defendant wrote an uncertified letter to the prosecuting

district attorney stating that he "wish[e]d to formally

protest and contest the existing charges against [him]."

473 So. 2d at 661.  Relying on Whitley and McCallum, the

17

Court found no violation of the IAD, due the defendant's

failure to strictly comply with its notice provisions:

> "Strict compliance with the requirements of
> Art. III is necessary in order to trigger the
> state's obligations under the Act when the
> statutory procedure is bypassed. [Citation
> omitted.]  Appellant's uncertified or
> unregistered letter seeking to negotiate his
> charges was insufficient to trigger the
> State's obligation under the Act. It is for
> situations such as this that the certified or
> registered mail requirement was enacted.
> [Citations omitted.]  We therefore hold that
> the state did not violate any portion of the
> Uniform Mandatory Disposition of Detainers
> Act, and appellant was properly tried for the
> charges set out in the indictment."

Id.  See also Nichols v. State, 651 So. 2d 76, 77 (Ala.

Crim. App. 1994) (no IAD violation where there was no

showing "that the court or the prosecution received notice

of the appellant's request for final disposition before he

filed his motion to dismiss two days before trial.").

The United States Supreme Court has held that the 180-

day time period of Article III (a) does not commence until

the defendant's request for final disposition of the

charges against "has actually been delivered to the court

and prosecuting officer of the jurisdiction that lodged the

detainer against him[,]" and rejected the defendant's

argument that the period begins to run upon his submission

of his request to his custodial prison officials.  Fex v.

Michigan, 507 U.S. 43, 52, 113 S. Ct. 1085, 1091, 122 L.

Ed. 2d 406 (1993).  Notably, unlike the April 26, 2004

"Motion For Order Dismissing Detainer" upon which James now

relies to purportedly trigger the 180-day time limit under

the IAD, in Fex the request appears to have been made by

the defendant by properly providing his custodial prison

officials with his request for final disposition of his

charges.  507 U.S. at 46, 113 S. Ct. at 1088.

> **B.  James's April 26, 2004 "Motion For Order Dismissing
> Detainer" filed in the Covington County Circuit Court
> did not trigger the provisions of the IAD; rather, his
> May 29, 2004 "Notice Of Place Of Imprisonment and
> Request For Disposition Of Indictments, Informations,
> Or Complaints," properly delivered by the Florida
> Department of Corrections with other pertinent IAD
> documents, triggered those provisions, and his November
> 18, 2004 trial was timely as a result.**

When the above-stated principles of this Court and the

United States Supreme Court are applied to the facts at

hand, it is clear that there was no violation of the IAD

here.  James was in the custody of the Florida Department

of Corrections on an apparently unrelated conviction and

sentence when the Covington County Sheriff's Department, on

March 10, 2004, requested that a detainer be placed on him

due to his indictment on the instant unlawful distribution

charge.  (C. 49)  In accordance with that request, the
Florida Department of Corrections placed that detainer on
James.  (C. 50-51)

By registered mail dated May 6, 2004, but not received
until May 29, 2004, the Florida Department of Corrections
gave notice to the Covington County Circuit Clerk and the
Covington County District Attorney that James requested
disposition of the charge under the IAD; the documents were
stamped as filed in the Clerk's Office on June 1, 2004. (C.
3-8, 48)[5]  Prior to that official notice delivered by the
Florida Department of Corrections, on April 26, 2004, James
filed in the Covington County Circuit Court a pro
se "Motion For Order Dismissing Detainer," whereby he
"humbly ask[ed] that all detainers be held to run
concurrent with all current incarceration time and be
dismissed."  (C. 10, 48, 53)

James was arrested on the unlawful distribution charge
on July 27, 2004, and made his initial appearance in the

_____

[5]Although the documents were stamped as filed on June 1,
2004, the State, in its opposition to James's motion to
dismiss his charge, stipulated to the May 29, 2004 date as
the date that the Covington County District Attorney's
Office and the Covington County Circuit Clerk's Office
received the IAD documents from the Florida Department of
Corrections.  (C. 54)

trial court on June 30, 2004.  (C. 12, 15)  James moved to
dismiss his charge on the ground that the State failed to
comply with the time limitation provisions of the IAD.  (C.
40)  On November 18, 2004, the trial court conducted a
hearing on James's motion and denied it, thereby allowing
his trial to proceed on that date.  (Supp. R. 1, 29, R. 1)
On the same date, the trial court denied James's pro se
"Motion For Order Dismissing Detainer."  (C. 10)

Contrary to James's contentions, the disposition of his
unlawful distribution charge was timely under the IAD.  To
benefit from the provisions of the IAD, James must have
first complied with those provisions by making a "proper
request for disposition[.]"  Whitley, 392 So. 2d 1220,
1224.  If the defendant does not comply with the IAD by
delivering a request for disposition, in proper form, to
the appropriate court and prosecuting authority, it results
in a finding that "the 180-day period was never activated."
McCallum, 407 So. 2d 865, 869.  James's April 26, 2004
"Motion For Order Dismissing Detainer" contained no
certificate by Florida custodial officials describing his
incarceration status as required by Alabama Code (1975)

21

§ 15-9-81, Article III (a).  In disregard of the provisions of Article III (b), James did not send the document by certified mail, and only mailed it to the Covington County Circuit Court; it was not sent to the "appropriate prosecuting authority," the Covington County District Attorney.  Accordingly, it did not serve to trigger the 180-day time limit of Article III (a).  See Whitley; McCallum; St. John; Nichols.  James's claim that the statute must be interpreted "in the broadest way possible[,]" Appellant's Brief 8, disregards these holdings.  E.g., McCallum, 407 So. 2d at 869 ("the burden is on the prisoner to demonstrate strict compliance" with Article III when he bypasses its statutory procedure).

The 180-day period was instead initiated by the May 29, 2004 notice provided to the Covington County Circuit Court and the Covington County District Attorney by the Florida Department of Corrections.  See Lex.  James's trial began on November 18, 2004, 173 days after this notice was provided by the Florida Department of Corrections.  In accordance with the IAD, James was "brought to trial within 180 days after he...caused to be delivered" his request for disposition of the charge.  Alabama Code (1975)

§ 15-9-81, Article III (a).  Because there was no violation
of the IAD here, the trial court did not err in denying
James's "Motion To Dismiss" and "Motion For Judgment Of
Acquittal Notwithstanding The Verdict Or In The Alternative
Motion For New Trial" on this ground.  See Whitley;
McCallum; St. John; Nichols; Lex.

**CONCLUSION**

For the foregoing reasons, the trial court's judgment
is due to be affirmed.

Respectfully submitted,

Troy King
*Attorney General*

By:

Marc A. Starrett
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October,
2005, I did serve a copy of the foregoing on the following,
by placing the same in the United States Mail, postage
prepaid and properly addressed as follows:

> Grady O. Lanier, Esq.
> 205 S. Three Notch
> Andalusia, Alabama  36420

_____
Marc A. Starrett
Assistant Attorney General


ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7300
225743/STARRETT
77470-001

24